UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DESIEIRE QUINTERO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SANTA CRUZ, et al.,<br><br>Defendants. | Case No. 5:19-cv-01898-EJD<br><br>**ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION** |

Pro se Plaintiffs Ross Camp Council of the Santa Cruz Homeless Union bring this ex parte emergency request, on behalf of Desieire Quintero, Santos Mendez, Michael Sweatt, Sonny Lopez, Rafael Saldana, Crystal Olsson, Vanessa Montoya, Juan Macedo, Mark Hemerbach, Shannon Vudmuska and all other similarly situated residents of the Ross Homeless Encampment located behind Ross at the Gateway Plaza in Santa Cruz, California ("Encampment"); Food not Bombs; and Homeless United for Friendship and Freedom ("Plaintiffs"), against Defendants City of Santa Cruz, Santa Cruz City Council, Santa Cruz City Manager Martín Bernal, Assistant to the City Manager Susie O'Hara, Santa Cruz City Manager Tina Shull, Santa Cruz Chief of Police Andrew Mills, "Take Back Santa Cruz" and Does 1–100 ("the City"). Dkt. No. 13 ("Mot.").

Plaintiffs, in seeking a preliminary injunction, argue that the City's closure of the Encampment is a violation of their Eighth Amendment right under the U.S. Constitution. Dkt. No. 13; Dkt. No. 1 at 14–15. Plaintiffs' temporary restraining order application was initially granted on April 23, 2019. For the reasons stated below, the court dissolves the temporary restraining order and denies a preliminary injunction.

## I. BACKGROUND[1]

Plaintiffs are residents of the Encampment located in Santa Cruz, California, and organizations in support thereof. Mot. at 2. The Encampment includes approximately 200 persons. *Id*. The Encampment was created in November 2018 as a result of the closure of the 1220 River Street Shelter in Santa Cruz. Mot. at 3. Members of the Encampment believe this type of homeless community provides them safety in numbers. Plaintiffs argue closure of the Encampment "poses a direct risk to the health and safety of the Ross Encampment residents as well as the health and safety of the community of Santa Cruz" because residents will be forced back out into the community and isolated without protection. Mot. at 7. More specifically, female homeless persons are more susceptible to sexual assault when camping alone. *Id*. In addition, angry citizens have assaulted the homeless, and homeless receive regular citations from law enforcement for their acts of homelessness. *Id*.

Plaintiffs filed a complaint for injunctive relief with this court on April 9, 2019. Dkt. No. 1. The City has yet to respond. Plaintiffs filed a Memorandum in Support of the Complaint requesting immediate injunctive relief on April 22, 2019. Mot. Plaintiffs subsequently filed a Supplemental and Urgent Motion for Temporary Restraining order on April 23, 2019, which the court granted the same day. *See* Dkt. Nos. 13, 14. The City opposed. Dkt. Nos. 15, 17. The court held an evidentiary hearing on April 26 and 29, 2019, taking testimony from nine witnesses including residents of the Encampment and city officials. Magistrate Judge Cousins saw the parties for settlement discussions on April 26 and 29, 2019.

## II. LEGAL STANDARDS

The standard for issuing a TRO is the same as that for the issuance of preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977). Thus, much like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

---

[1] The background is a summary of the allegations in the Motion for Temporary Restraining Order (Dkt. No. 13) that are relevant to a continued injunction.

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
2

to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'" *Idaho v. Coeur D'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014)).

Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This articulation represents "one alternative on a continuum" under the "'sliding scale' approach to preliminary injunctions employed" by the Ninth Circuit. *Id.* at 1131-32. But "[t]he critical element in determining the test to be applied is the relative hardship to the parties." *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Id*. Whether to grant or deny a TRO or preliminary injunction is a matter within the court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979).

### III. DISCUSSION

Before getting to the merits of the application, an ex parte TRO application must first satisfy Federal Rule of Civil Procedure 65(b)(1), which demands that the opposing party or parties have been given notice. Plaintiffs' TRO application does not provide a certificate of service for either injunction requests (Dkt. Nos. 10, 13); however, Plaintiffs' complaint includes an exhibit of an email from the Plaintiffs' advocate to the Santa Cruz City Attorney providing notice that a lawsuit had been initiated and that Plaintiffs would be "filing for a Preliminary Injunction against the closure of the Ross Encampment." Dkt. No. 1 at 43. Thus, the court finds that the City has been given notice. The court next addresses Plaintiffs' facts against the *Winter* factors.

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
3

### A. Irreparable Injury

Plaintiffs have failed to establish that they would suffer *irreparable* harm due to the closure of the Encampment. The closure of the Encampment will undoubtably cause the residents disruption and severe inconvenience as they will need to pack up their belongings and potentially end friendships they have developed throughout their time at the Encampment; however, this harm does not rise to the level of irreparable harm that this element requires. The testimony established that the City has provided adequate alternative shelter to every resident in the Encampment. The safety concerns expressed by Plaintiffs are mitigated by the alternative shelters and housing to be provided by the City.

As to harm, the court heard testimony from a Plaintiff who previously lived at the Encampment. Ms. Olsson testified that multiple murders and sexual assaults of women living alone and homeless throughout Santa Cruz has occurred within the last year. She felt safer having moved into the Encampment in November 2018. With that, she also testified that she feared being shot while being at the Encampment. Additional testimony at the hearing reported that Ms. Olsson voluntarily left the Encampment and now resides at another shelter provided by the City. There is no dispute homeless individuals face greater challenges in the community; however, closing the Encampment and providing alternate housing for Ross Encampment residents provides housing and shelter in a safe contained area.

Ms. O'Hara, Assistant to the City Manager, testified at the hearing that she recognized the needs of the residents of the Encampment and personally met and talked with 112 individuals over 2 days. She testified that the residents' main concern was safety. Throughout her visit she passed out 112 vouchers for temporary housing and 30 residents took her up on the opportunity. Ms. O'Hara testified that the City is providing alternative housing for all residents at the Encampment in response to the closure. The primary shelter offered by the City is the 1220 River Street shelter that has funding for 60 days with possibility of extension. Eighty beds are ready at the 1220 shelter and many other partners, such as the Santa Cruz Motel, are ready to accept Encampment residents with city provided vouchers. Two other shelters, the VFW and Laurel shelters, will have

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
4

1 available space for residents longer than 60 days. The City is also providing transportation to the
2 shelters as well as storage for personal belongings. The City camps and shelters will include basic
3 hygiene services, safety standards, behavior expectations for safety concerns, and security onsite.

4     In sum, under the totality of the circumstances, the City has made efforts to determine the
5 needs of the residents of the Encampment and has worked to find adequate housing for all the
6 residents in this community to meet their needs. Because the City has offered adequate alternative
7 space for the residents, harm to Plaintiffs is lacking.

### B. Likelihood of Success on the Merits

Plaintiffs fail to establish that they would likely prevail on their Eighth Amendment claim. Plaintiffs rely on a statement posted publicly by the City Manager stating in his own words that new Ninth Circuit law requires the City to provide some form of alternate adequate housing for the homeless residents before they can close the Encampment. Dkt. No. 10 at 2, 7–9, Dkt. No. 10–1 at 43, *Open Letter to the Community*. The basis for Plaintiffs' argument arises from a recent Ninth Circuit decision finding that criminal prosecution of homeless persons sleeping or lying in public is a violation of their Eighth Amendment right if the city fails to provide them available beds in a shelter. *Martin v. City of Boise*, 902 F.3d 1031, 1035 (9th Cir. 2018), *and superseded by Martin v. City of Boise*, No. 15-35845, 2019 WL 1434046, at *1 (9th Cir. 2019).

*Martin* is distinguishable from Plaintiffs' circumstances. First, nothing in the record supports a showing that the City has prosecuted someone from the Encampment. Nor do Plaintiffs allege that any resident has been criminally prosecuted under the City's camp ordinance. In fact, the City has suspended the enforcement of its camping ordinance to ensure that no indigent homeless individual will be cited for sleeping outdoors or camping. Dkt. No. 15 at 20. Moreover, the Court in *Martin* specifically noted that their "holding does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it." *Martin*, 2019 WL 1434046, at n.8. Here, the City has offered alternative adequate options to every resident in the Encampment. Thus, reliance on *Martin* does not provide Plaintiffs the relief they seek.

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

Accordingly, Plaintiffs have not shown a likelihood of success on the merits.

### C. Balance of Hardships

This element tips slightly in favor of Plaintiff as the disruption to the relocation is significant; however, this does not overcome a lack of irreparable harm and a lack of success on the merits. Many of the residents at the Encampment arrived at the camp based on circumstances surrounding the closure of the 1220 River Street Shelter in November 2018. Now, the City will have them move back to the shelter they closed six months ago. Certainly, uprooting communities with repetitive closures of homeless encampments creates unnecessary hardship on Plaintiffs. The conditions at the Encampment as shown in the City's Exhibits depict an intolerable living situation that no person should have to live in.

The parties paint two different pictures of the Encampment. By declaration for the Plaintiffs, Mr. Drew Glover, member of the Santa Cruz City Council, states that in the past five months he has spent time at the Encampment and met with residents. Dkt. No. 13-2 at 2. He further states that:

> [a]t no time in my numerous trips to Ross Camp and based upon my position as a member of the Santa Cruz City Council and member of the City's Public Safety Committee, have I ever observed anything that could arguably be considered an imminent and/or unmanageable risk to public health and safety. I have never observed loose needles or human waste on site.

*Id*. On the other hand, the City, in its opposition to the TRO states that the health and safety violations of the Encampment "are so pervasive and severe as to constitute an immediate and imminent danger to the health, safety, and welfare of Gateway Encampment occupants, first responders, and the public and community at large." Dkt. No. 15 at 6. The City argues that it has "regularly observed discarded, uncapped hypodermic syringes and their components in an throughout the site, human waste (feces) in and around the camp, in open pits, and in jugs, water bottles, and buckets, and people with wounds and sores." *Id*. at 8.

In addition, the City argues that the Encampment lacks "needed emergency access for fire, ambulance, and police services, non-existent fire breaks and setbacks, dangerous and improper storage of explosive, compressed fuel sources and flammable, hazardous materials, the dangerous

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
6

and improper use of open flames, fires, and cooking devices, the dangerous vectors including rodents and disease[2] . . . and lack of adequate sanitation." *Id*. at 60. Multiple fires have occurred at the Encampment. *Id*. at 7. A secondary needle exchange program distributes and collects approximately 600 needles per day. *Id*. at 8. City officials have observed "rampant illicit drug use." *Id*. Four deaths have been reported in the Encampment. *Id*. at 9.

Plaintiffs conducted a cleanup of the Encampment on April 28, 2019, the Sunday prior to the Monday hearing and eliminated some of the hazards previously recorded by the fire chief. Even still, the hardships towards Plaintiffs do not tip sharply enough in their favor as to outweigh the lack of a likelihood of success on the merits or irreparable harm.

### D. Public Interest

The public interest factor weighs against granting a preliminary injunction. The court recognizes the sensitivity and seriousness of this issue. It is no secret that the rising housing costs in Silicon Valley, the Bay Area to the north, and just south in Santa Cruz, has exacerbated the homeless population and encampments throughout these areas. Homelessness is a significant and complicated issue confronting cities in the surrounding counties and across the nation. As homeless encampments continue to grow, cities struggle to balance the needs of their communities providing for the health and safety of all residents including those who cannot afford housing.

The City has a responsibility to protect the public's health and safety and often face challenges, as is the case here, in finding solutions that meet the needs of competing interests. The City has expressed safety concerns regarding the Encampment. Four deaths have already occurred this year within the Encampment. Fire Chief for the City of Santa Cruz, Jason Hajduk, who inspected the Encampment on April 3, 2019, testified that the Encampment was a "recipe for a mass casualty event." *See* Hr'g. Tr. Multiple fires have occurred in the Encampment since its inception. It is within the public interest for the City to identify health and safety hazards as is the

---

[2] Defendants allege that on March 22, 2019, the County Health Services Agency's Communicable Disease Unit confirmed a case of wound botulism in an occupant of the Encampment. Dkt. No. 15 at 8. *See also* Dkt. No. 15, Ex. F.

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
7

case here and implement solutions and regulations to avoid preventable tragedies such as the ghost ship fire in Alameda County.

The City has spoken with residents of the Encampment, identified primary concerns, and worked with community providers to create alternative shelter solutions for every resident in the Ross Encampment. The options may not meet all of the desires of the Ross Encampment residents including the safety that only a community can provide. The Cities' alternative options will provide for a community environment to enable more secure sleep and storage areas. The alternative areas will also provide resources for enhanced sanitation and security. It is in the public interest for homeless residents to reside within safe communities that provide shelter, sanitation, and structure to work toward the ultimate goal of finding more permanent housing.

Accordingly, it is within the public interest to dissolve the temporary restraining order.

## IV. CONCLUSION AND ORDER

In weighing the *Winter* factors, Plaintiffs have not shown the need for a continued injunction against the closure of the Encampment. The City has provided alternative housing to every resident in the Encampment. Because of this, Plaintiffs cannot show irreparable harm. It is in the public interest for Cities to develop solutions that can meet the unique needs within their own communities. There may not be a perfect solution, but in this circumstance, adequate alternative housing has been provided. For the reasons stated above, Plaintiff is not entitled to the extraordinary relief sought of denying the City's right to close the Ross Encampment.

Any extension on the ex parte application for temporary restraining order and any future preliminary injunction (Dkt. No. 13) is DENIED.

**IT IS SO ORDERED.**

Dated: April 30, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-01898-EJD
ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
8